OF

# THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA;

JUNE TERM, 1837.

---

### GOODLET VS SMITHSON.

*Of title to lands, purchased from the United States.*

1. In the case of sales of lands by the United States, the *law* gives the *right*, and the patent is to be considered, not as the title, but as the *evidence*, by which it is shewn that the perequisites of a legal sale, have been complied with.
2. A purchaser of lands from the United States, *by the act of entry and payment*, acquires an inchoate legal title, which may be aliened, descend, or be divested in the same manner as any other legal title.
3. So, *previous to the issuance of a patent*, the estate of one in lands, purchased of the United States, and for which he has received a certificate of final payment, may be levied on and sold under execution, issued on a judgment at law.

Goodlet commenced an action of trespass to try titles, against Smithson, in the Circuit Court of

Benton. The plea was not guilty, upon which an issue was joined to the country.

On the trial, the plaintiff relied upon a sheriff's deed,—the land having been sold under an execution issued upon a judgment at law. The plaintiff proposing shewing by proof, that the land he claimed, had been entered by the defendant in the land office of the Coosa land district, previous to the sheriff's levy upon it; and that full payment had been made by the defendant, who had received a certificate therefor, in due form of law.

The Court charged the jury, that previous to the issuance of a patent, the purchaser of lands from the United States, had no such estate in the lands, as could be levied on, and sold under execution issued upon a judgment at law.

The jury found a verdict for the defendant, on this charge: and the plaintiff having excepted to the charge of the Court, sued out a writ of error.

*Thornton* for the plaintiff in error,—*P. Parsons* contra.

GOLDTHWAITE, J.—Goodlet instituted this action of trespass, to try titles against Smithson, and sought thereby to recover the possession of the tract of land described in the declaration.

From the bill of exceptions, taken on the trial of the case, in the Circuit Court, it appears, that Goodlet claimed title under a sheriff's deed. The execution, by virtue of which, the tract of land, which is the subject of controversy, was sold, was regularly issued on a judgment obtained against

GOODLET *vs* SMITHSON.

Smithson; and evidence was offered to prove, that he had entered the land, made full payment, and received a certificate for it in due course of law, from the receiver of public monies for the proper land district. On this evidence, the Court instructed the jury, that previous to the issuance of a patent to Smithson, he had no such estate in the land, as could be levied on and sold by virtue of an execution, issued on a judgment at law.

Goodlet, having failed in his suit, now prosecutes his writ of error, to reverse the judgment rendered against him, and here assigns, that the Circuit Court erred in giving the instructions, before stated, to the jury.

It is not contended that any thing has been omitted, either by the purchaser of the land, or by the officers of the government, which by law is required to be performed, to make the act of purchase complete; but it is insisted, that previous to the time when a patent actually issues, the title derived by the act of purchase, is merely equitable, and the purchaser is invested with no legal estate, and consequently, under our statute,* his right can only be divested by means of a suit in chancery.

*Aik. Dig. 287.

In the ordinary case of contracts between individuals, relating to the sale of lands, the title of the seller, does not pass to the purchaser, except a conveyance in the form prescribed by law, be actually executed, previous to which, the interest of the purchaser is a mere equity; but this, is, because the title to land, can pass alone by reason of some one of the common assurances, or conveyances which are known to the law. In the case of sales made by

the United States, the law gives the right, and the patent may be considered, not as the title itself, but as the evidence by which it is shewn, that the pre-requisites to a legal sale have been complied with.

The acts of Congress are silent, in respect to the time when the purchaser of the public lands, may enter and enjoy the full and exclusive dominion of his purchase: but it is evidently contemplated by all the legislation on the subject, that the act of purchase, transfers an immediate right of possession to the purchaser, and he may at once enter on the land, if in fact the possession be, as it is always presumed to be, vacant, or if otherwise, the title thus acquired is sufficient to enable him to oust any intruder by due course of law.

Previous to the act of the twenty-fourth April, eighteen hundred and twenty,* the sales of the public lands were usually made on a credit, and the purchaser was not entitled to receive a patent, until the period of credit had expired, and he had made the entire payment for the land; but his right to the possession, was complete with the act of entry, of which the certificate then required to be issued, was the legal evidence; and on this, without the aid of legislative enactment, he could maintain an action at law, against, and recover the land from any one in possession, under a weaker title than himself. When by the act of Congress referred to, the credit on sales was abolished, no change was made in the right acquired by the purchase, nor could the patent issue to the purchaser, without some delay, but the certificate which was

*2 Story, L. U.1775

required to be given to him was, as before, evidence that the purchase was complete.

He had performed every act which the law required from him, when he entered the land and paid the purchase money: all which was to follow, as to issuing of the final and complete evidence of right in the form of a patent, was to be performed by the ministerial officers of the government; but their omission, could not in any manner change or effect his title; and although the patent would only be evidence from its date, yet if it became necessary from any cause whatever, to shew the inception of the legal title for the act of entry, it could be shewn by the production of the certificate required to be given, and the title would be referred back to its source.

We arrive then, at the conclusion, that by the act of entry, and payment of the purchase money, the purchaser of land from the United States, acquires an inchoate legal title, which may be aliened, descend, or be divested, in the same manner as any other legal title, and this view of the case is amply sustained by authority.

In Pennsylvania, it has been repeatedly held, that the payment of the purchase money, and a survey, though unaccompanied by patent, gives a legal right of entry,—*Sims vs Irvine*\*,—*Penn vs Klyne*,†—*Copley vs Biddle*,‡—and this rule derives additional force in its application to this case, as in that State, an equitable title, will not authorise a recovery in ejectment.—*Vanhorn vs Chesnut*,§—*Carson vs Bondurant*,‖ In Kentucky in the case of *Thomas vs Marshall*,\* it was held that an entry or survey of

\*3 Dall. 457.
†1 Wash. C. C. R. 207.
‡2 do. 354.
§2 Wash C. C. R. 160.
‖2 Wash. C. C. R. 33.
¶Hardin Rep. 19.

5 P.    32

lands, was an inchoate legal title, which would descend and might be aliened; and vested such a legal right as might be sold under an execution.

*2 Porter 437.

In this Court, in the case of *Bullock vs Wilson,*\* it was decided, that a certificate of final payment, was evidence of a legal title, on which an eject-ment could, be maintained.　The case of *Masters vs Eastis,*† cannot be considered as at variance with

†3 Porter 363.

the principle decided by the Court, in the case of *Bullock vs Wilson.* It is true, in that case, it was held that the grantee of the United States, must succeed against the assignee of a certificate, which had previously been held by the grantee, and which he had assigned to him; but it is not stated in what manner the assignment was made, most probably however, by mere indorsement, which could pass no title, for the Court directly and explicitily recognise the principle, that if a conveyance had been made by deed, the title of the grantee, by the patent, would have enured to the defendant in that action.

How far a patent and a certificate of final payment for the same tract of land, might conflict with each other, when issued to different persons, is a question not now raised, and therefore it need not be considered; but it is conceived no difficulty could arise in such a case, if the rule recognized by this Court, in the case of *Masters vs Eastis,* were to be applied.

The Circuit Court having erred, in giving the charge before stated to the jury trying the case, the judgment rendered must be reversed, and the case remanded.