## PAUL DILLINGHAM, Plaintiff in Error,

*vs.*

## LUCIUS G. FISHER, Defendant in Error.

ERROR TO THE CIRCUIT COURT OF ROOK COUNTY.

The term, "right of preemption," has acquired in the law a clear and definite signification.

It implies the exclusive right which a person has to purchase a quantity of land belonging to the United States, in consequence of having complied with the acts of Congress relating to that subject.

A preemptor is one, who by settlement upon the public lands, or by cultivation of a portion thereof, has obtained the right to purchase the portion thus settled upon or cultivated, to the exclusion of all other persons.

It would seem that the right of a preemptor may have three different stages, or phases:

1. When he has complied with the provisions of the acts of Congress, by settlement or cultivation, &c., not yet having paid his money or obtained a certificate of purchase from the register of the land office. The rights of a preemptor in this stage are inchoate and personal. They cannot be conveyed or assigned to others.

2. Where the preemptor has paid his money, and obtained the register's certificate of purchase. Here the "right of preemption" has been merged in emption. The strict legal title is yet in the government, but the entire equitable title and interest are in the purchaser, which he may transfer or assign at pleasure. He may convey by deed, and the legal title will vest in his grantee upon the issuing of the patent.

3. Upon the issuing of the patent by the United States, and the perfection of the legal title, combined with the equitable interest in the purchaser, or *quondam* preemptor.

The words, "right of preemption," in the third section of the act of Congress of 1830, which makes "all assignments and transfers of the right of preemption, given by this act, prior to the issuance of the patent, null and void," must be held to relate to the right the preemptor has before the payment of the purchase money, and the issuing of the register's certificate of purchase to him.

THE plaintiff in error brought ejectment against the defendant in error, for a part of the southeast fractional quarter of fractional section 35, town 1 north, of range 12 east, particularly described in the declaration. Issue was joined, which was tried by a jury, with a verdict and judgment for defendant. Plaintiff brought error.

On the trial in the court below, the plaintiff read in evidence to the jury, the following "stipulation" (No. 1):

"In this cause, the respective parties thereto stipulate and agree to the following facts, to be considered as proven, and established by unexceptionable, legal and sufficient evidence on the trial of the issue in the cause, that is to say :

"On the 16th day of November, 1838, Robert P. Crane preempted the southeast fractional quarter of section 35, town 1 north, of range 12 east, in said Rock county, in due form of law, under and according to the provisions of the preemption law of the United States, of June 22d, A. D. 1838, being ch. 119 of the laws passed and enacted by the Congress of the United States, in 1838. He, the said Crane, then and there making the proof required by said act, and paying the price for said land, by said act required ; and he, said Crane, then and there receiving from the receiver of the proper land office, a receipt or certificate of purchase of and for the said land, in due form of law, which certificate said Crane has ever since held and now holds; and that the patent for said land issued in due form of law to said Crane, on the 9th day of May, 1842, and not before.

"That said Robert P. Crane conveyed said land, by proper deed to Samuel B. Cooper, on the 22d day of January, 1855, and the said Cooper afterwards conveyed the same to Jared S. Demmon, and afterwards, on the 23d day of April, 1855, said Demmon conveyed the same to plaintiff. All of which conveyances are in due form, &c. That the land described in the declaration as part and parcel of the said fractional quarter, ' was at the time of the commencement of the suit in the possession of the defendant, and still is, and is of the value of six thousand dollars.' "

The plaintiff then rested.

The defendant then offered to read in evidence, on his behalf, the following stipulation (No. 2) :

"The parties to this cause respectfully stipulate, and hereby admit to be considered as established on the trial of the issue herein joined (subject, however, to the plaintiff's objection on the trial, that the said facts herein admitted are not legal, com-

petent and material to the issue, and proper to be given in evidence):

" That the said Crane, subsequent to the 16th day of November, 1838, but before the issuance of the patent to him from the United States, on his preemption, as stated in stipulation No. 1, made and delivered to one Kearney a proper deed of gift and grant, in and by which the said Crane expressed that he did give and grant unto the said Kearney, the lands described in the declaration and that the said Kearney, subsequently conveyed the same to the said defendant for a valuable consideration," &c.

To the introduction of this stipulation in evidence, the plaintiff objected, and the court overruled the objection : to which opinion of the court, the plaintiff excepted.

The defendant then read this stipulation in evidence, and rested also.

Thereupon the plaintiff requested the court to instruct the jury:

1. That the plaintiff had established in evidence a *prima facie* case, and on his own testimony was entitled to recover; which was granted.

2. That the deed from Robert P. Crane to said Kearney, in and by which the said Crane expressed that he did give and grant unto the said Kearney, the land described in the said declaration, having been made and delivered to said Kearney by said Crane, as a transfer and assignment of land to which the said Crane (at the time of making the deed), had only a preemption right, under the preemption law aforesaid, and having been made and delivered before the issuance of the patent to said Crane for said land, that the said deed was absolutely void, as a transfer, assignment or conveyance to said Kearney, of the land therein described, and passed to said Kearney no right or title to said land.

Which said instruction the court refused to give: to which opinion of said court, the plaintiff excepted.

3. That the deed specified in the second stipulation read in evidence, from Crane to said Kearney, in and by which the said Crane did express that he did thereby give and grant unto the said Kearney, the land in the said declaration mentioned; was

(for the reason that it was intended as, and purported to be, a transfer and conveyance of land to which said Crane then had only a preemption right under the preemption law of 1838, specified in the stipulation, and was made and delivered to said Kearney previous to the issuance of the patent for the said land to said Crane), absolutely null and void as a conveyance or transfer of said land.

Which instruction, the said court refused; to which opinion of the court, the plaintiff excepted.

*By the Court*, WHITON, C. J. The facts in this case are as follows: On the 16th of November, A. D. 1838, in conformity to an act of Congress passed on the 22d of June, 1838, one Robert P. Crane preempted a quantity of land (including the land in dispute), and on the 9th day of May, A. D. 1842, a patent for the same was duly issued to him. On the 22d day of January, A. D. 1855, the said Crane conveyed the land in controversy to Samuel B. Cooper, and the said Cooper afterwards conveyed the same to one Jared L. Demmon, and afterwards, on the 23d of April, 1855, the said Demmon conveyed the same to the plaintiff.

After the 16th of November, A. D. 1838, and before the patent issued to Crane in 1842, he conveyed the land in controversy to one Kearney, and the said Kearney afterwards conveyed the same to the defendant.

It will be seen that both the plaintiff and the defendant set up a title to the land derived from Crane, and it is clear that the title of the defendant must prevail if the deed from Crane to Kearney conveyed to the latter a good title.

The case then must turn upon the effect given to this deed. The plaintiff contends that it is void because it was executed before a patent for the land had been issued to Crane; and to maintain this proposition he relies upon the act of Congress under which Crane obtained the land, which, as he contends, declares all conveyances made by a preemptor before the emanation of the patent, void.

The sole question, therefore, which we are to decide, is, whether

by the law of Congress in force at the time of the conveyance from Crane to Kearney, the conveyance was void.

The act of the 22d of June, 1838, under which Crane obtained the land, revived the act of Congress passed the 29th of May, 1830, the third section of which provides that "all assignments and transfers of the right of preemption given by this act, prior to the issuance of the patent, shall be null and void."

It is not claimed that there is any other clause or part of the act of 1830 revived by the act of 1838, which affects the deed from Crane to Kearney. so that the decision must depend upon the construction which is given to the one above cited.

It is contended by the counsel for the plaintiff in error that it extends not only to assignments and transfers of the right of the preemptor made before the payment of his money and obtaining his certificate from the land offices, but also to all the right and interest which he may acquire afterwards and before the issuing of the patent; that although after the purchase money has been paid, and the certificate obtained, the right of the person thus paying his money and obtaining the certificate is not strictly a right of preemption, still the words "before the issuance of the patent," contained in the act, clearly show that it was the intention of Congress to prohibit the sale of the interest in the land which the preemptor obtained by the payment of his money before the patent issued to him, as well as his right of preemption, strictly so called. The counsel cited a number of cases in which this construction of this act is adopted. *Glenn vs. Thistle*, 23 *Miss. R.* 42; 27 *id.* 542; *Hudson vs. Milner*, 12 *Ala.* 669.

This question does not seem to have been before the Supreme Court of the United States, nor, indeed, as we can discover, before any court of the United States except the Circuit Court for the district of Illinois. In the case of *Morgan vs. Curtenius et al.*, decided in that court (4 *McLean R.* 366), the court took a view of the effect of the clause of the act of Congress in question, entirely at variance with the cases in the state courts above referred to. In that case the court decided that after the emanation of the patent the court could not go behind it and examine the assignments, and instructed the jury that a conveyance given by

a preemptor, even before he purchased the land and paid the purchase money, created a good outstanding title in the grantee to defeat an action of ejectment. The court must have been of opinion that the only effect of the clause of the act of Congress under consideration, was to prevent the assignee or transferee of the preemption right from acquiring any interest in the land, which would enable him to obtain the patent; because, after the patent had been issued to the preemptor, effect was given to his conveyance made before the land was purchased and paid for, the court assigning as a reason that it could not look behind the patent.

The authorities being thus at variance, we shall be compelled to view the question somewhat as an original one. What then is the proper construction to be put upon this provision? It was stated at the argument that, although the terms "right of preemption or preemption right," as used in the act of Congress, are somewhat ambiguous, the words, "before the issuance of the patent," show clearly that it was the intention of Congress to prohibit sales of the land after preemption has been obtained, as well as the right which the preemptor has before the payment of his money and the issuing of the certificate. It was insisted that these words made the meaning of the statute plain, which without them would be ambiguous.

But we think that these words create the only ambiguity which this part of the statute presents. If the term "right of preemption," only, had been used, we should not have had any difficulty in giving the statute a construction, as these words have acquired in that part of the United States where the public lands are situated, a clear and definite signification. They mean the exclusive right which a person has to purchase a quantity of land belonging to the United States, in consequence of having complied with the laws of Congress upon the subject of preemption. These laws have invariably required that in order to acquire this right, a person must have settled upon the land or cultivated a portion of it, or have done both; so that a preemptor is one who, by settlement upon the public land or by cultivation of a portion of it, has obtained the right to purchase a

portion of the land thus settled upon or cultivated, to the exclusion of all other persons; and but for the words now under consideration, we should think that the sale or assignment of this right was alone prohibited. It was contended by the counsel for the plaintiff in error, that this right was a mere personal privilege, and not in its nature assignable; and that it would be absurd to suppose Congress intended to prohibit the transfer of that which is not capable of transfer. But it is to be observed that such rights may be made assignable by the legislatures of the states and territories in which the public lands are situated, and it may have been the intention of Congress to declare such assignments void, notwithstanding they were allowed by state or territorial legislatures, and thus prevent the public domain from being occupied by persons who did not intend to purchase it and become permanent occupiers of the soil.

But whatever may have been the intention of Congress, we cannot give to the words "right of preemption" alone, such signification as would apply them to a subject matter wholly foreign to their true meaning and intent.

Do the words "before the issuance of the patent," used in the statute, so enlarge and extend their meaning as to compel us to give them this interpretation? We are compelled to answer this question in the negative. We have given full effect to the principle always applied to the interpretation of a statute which compels courts so to construe it as to give to all parts of it some force and effect, and also to the principle of interpretation by force of which courts look at all the various parts of the statute, and endeavor to make them all harmonize. But we have been unable to give the clause of the act of Congress in question, such a construction as to allow it to extend the meaning of the words "right of preemption," so as to prohibit a sale of the land after all the rights of preemption have been merged in the actual purchase of the land.

It is to be observed that our statute (*Rev. Stat. chap.* 98, § 95) provides that the receiver's receipt (such as Crane received at the time he paid for the land), shall be evidence of title in the person who pays the money, and to whom the receipt is given.

But it was contended by the counsel for the plaintiff in error, that the legal title to the public lands remains in the United States until the patent issues, notwithstanding the payment of the purchase money, and the issuing of the certificate to the purchaser.

It is not necessary to controvert this doctrine in order to uphold the law of this state, so far as it relates to suitors in our own courts. We suppose the legislature of this state can prescribe what shall be deemed evidence of title to land as between the citizens of this state and all who seek the aid of its judicial tribunals.

But whether this is so or not, it is plain that the rights of a person as a preemptor cease when he has paid the purchase money and obtained his certificate. He no longer has a right to purchase, because he has already purchased and paid the purchase money; it is therefore immaterial to inquire whether the legal title is in United States till the patent issues or not, because the purchaser has an interest in the land, entirely different from that of a preemptor; one which can be sold and which will pass by the ordinary forms of conveyances.

We cannot suppose that Congress intended by the words "previous to the issuance of the patent," to prevent the sale of the land, or of the interest in land which the preemptor acquires by the payment of the purchase money. Had this been intended, the prohibition would have been contained in language clear, plain and adapted to the object to be accomplished.

It was contended by the counsel for the defendant in error, that an act of Congress passed in 1832, authorized the sale of preemption rights, that the act was supplementary to the act of 1830, and was revived by the act of 1838, as an amendment of the act of 1830.

We have not considered this question, as the view which we have taken of the matter rendered an opinion upon that subject unnecessary.

The judgment of the court below is affirmed.