## BAMBERGER *v.* GEISER.

[ S. C. 33 Pac. Rep. 609.]

MORTGAGE AS SECURITY — ASSIGNMENT OF DEBT.— It is a familiar principle that where a debt is secured by a mortgage, the former is the principal and the latter an incident thereto, and that an assignment of the debt is an assignment of the mortgage, particularly where the debt is evidenced by a negotiable promissory note. Where such a note, secured by a mortgage, has been assigned by endorsement, the security is protected in the hands of a *bona fide* holder to the same extent as the note itself, unless there be a law requiring assignments of mortgages to be recorded.

DISCHARGE OF MORTGAGE BY MORTGAGEE OR TRANSFEREE.— A mortgagee or his transferee after assigning a negotiable note secured by a mortgage, has no power to enter of record a satisfaction of such mortgage; such an entry is wholly void and affords neither protection nor priority to a subsequent purchaser or mortgagee, even though the latter acted in perfect

good faith without notice of the assignment, and relying upon the recorded release, where there is no law requiring assignments of mortgages to be recorded.

RECORDING ASSIGNMENT OF MORTGAGE—CODE, §§ 3030 and 3031.*—In Oregon there is no obligation resting upon an assignee of a mortgage to record his transfer in order to protect himself against subsequent purchasers or mortgagees; sections 3030 and 3031, Hill's Code, impliedly permit such an instrument to be recorded when it is in the form of a conveyance, but it is optional with the transferee. Where the assignment of the mortgage is by an endorsement, or some memorandum not having the form of a conveyance, it cannot be recorded at all, under existing laws: *Oregon Trust Co.* v. *Shaw*, 5 Saw. 340, and *Watson* v. *Dundee Mtg. Co.* 12 Or. 481, approved and followed.

Baker County: MORTON D. CLIFFORD, Judge.

This is a suit by H. Bamberger, M. L. Tichner, and Sol Tichner, partners, as Bamberber, Tichner & Co., against Daniel Entermille, Emma Geiser, Edward Geiser, and Frank Geiser, and also Albert Geiser and Louise Geiser, both individually and as administrators of the estate of John Geiser, deceased, to foreclose a mortgage. Decree for plaintiffs, and defendants appeal. Affirmed.

*L. M. Robinson* and *F. C. White* for Appellants.

*Olmstead & Courtney* for Respondents.

The facts in this case are that on the fifteenth day of July, 1889, the defendant Entermille made and delivered

---

* The only sections of the Oregon Code bearing on the questions discussed in this opinion are as follows: § 3030. The recording of the assignment of a mortgage shall not in itself be deemed notice of such assignment to the mortgagor, his heirs, or personal representatives, so as to invalidate any payment made by them or either [of them], to the mortgagee. § 3031. Any mortgage that has been recorded may be discharged by an entry on the margin of the record thereof, signed by the mortgagee or his personal representative or assignee, acknowledging the satisfaction of the mortgage in the presence of the county clerk, who shall subscribe the same as a witness. § 3032. Any mortgage shall also be discharged upon the record thereof by the county clerk in whose custody it shall be, whenever there shall be presented to him a certificate executed by the mortgagee, his personal representatives or assigns, acknowledged or proved and certified as prescribed to entitle conveyances to be recorded, specifying that such mortgage has been paid or otherwise satisfied or discharged.— REPORTER.

his negotiable promissory note to A. J. Lawrence, C. W. Mandeville, and R. S. Anderson, for the sum of five hundred dollars, payable sixty days after date, and to secure the payment of the same he made and delivered to them his mortgage upon certain real estate, which mortgage was duly acknowledged and recorded. Thereafter the said promissory note was endorsed on the back "Without recourse," and signed by each of the payees named therein, when it was delivered into the possession of A. J. Lawrence, one of such payees, with the consent of the other two payees, to hypothecate or sell it. On the twenty-second day of July, 1889, the said A. J. Lawrence sold and delivered said note to the plaintiffs, and, at the same time, delivered to them the mortgage securing its payment, which said note and mortgage the plaintiffs still own and hold, and no part of the same has ever been paid. Subsequently, but before the maturity of the note, the defendant Entermille paid to Anderson and Mandeville, two of the payees named therein, the sum of fifty dollars for the purpose of liquidating in full the note and discharging the mortgage, whereupon Mandeville, one of the payees, wrote upon the margin of the mortgage record as follows: "State of Oregon, County of Baker. Full and complete satisfaction of the within mortgage this twelfth day of August, 1889, acknowledged. Lawrence, Anderson, and Mandeville. Per C. W. Mandeville. Attest: W. H. Packwood, Deputy County Clerk,"—all which was without the knowledge or consent of the plaintiffs. Their first knowledge of such discharge was acquired when this suit for foreclosure was commenced.

John Geiser, now deceased, took a mortgage on the same premises from the defendant Entermille to secure the payment of a sum specified therein, but at the time of taking the same he knew of the payment of the fifty dollars by the defendant Entermille to said Anderson and Mandeville, and that the note secured by the mortgage

was not taken up nor delivered when the record was so endorsed. On the twentieth day of January, 1891, after the death of John Geiser, the defendants named as administrators of his estate, in payment of such mortgage, took a deed from the defendant Entermille, wherein and whereby he conveyed to the estate of John Geiser deceased all his right, title, and interest in and to the property described in said mortgage, and, at the time of taking such deed, the defendant Entermille represented to the defendant administrators aforesaid that the note was paid and the mortgage cancelled, and said administrators examined the records of Baker County and found the mortgage cancelled in the words as already set out. Neither the defendant Entermille nor the defendants Geiser, administrators as aforesaid, knew that the plaintiffs owned the note until the commencement of this suit.

The trial resulted in a decree in favor of the plaintiffs, foreclosing their mortgage, and ordering the property sold to satisfy the note, etc., from which decree the defendants have brought this appeal. Affirmed.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

The question to be determined is whether the discharge of a mortgage upon the record by a mortgagee, after he has assigned it, operates to cancel such mortgage as against subsequent purchasers, in good faith and for value. If this question is to receive an answer in the affirmative, it must be owing to some legal obligation which our registry laws impose upon an assignee to record his mortgage if he would protect himself against such subsequent purchasers and encumbrancers. It is well settled that a mortgagee and his assignee are regarded as purchasers under the registry laws. It is a familiar principle that where a debt is secured by mortgage, the debt is the principal and the mortgage is the incident, and that an assignment of the

debt is an assignment of the mortgage. Here there was a written assignment of a negotiable note before maturity, and a delivery of the mortgage.

The assignment of the note carried the mortgage, as the former is the principal and the latter the incident. The assignee stands in the place of the payee. As the assignment of the note carried the mortgage, upon recognized legal principles the security is protected in the hands of a *bona fide* holder to the same extent as the note itself, unless there is some requirement of the law for the registry of such assignments. In *Carpenter* v. *Longan*, 16 Wall. 273, it was held that the assignment of a negotiable note before its maturity raises the presumption of a want of notice of any defense to it, and that this presumption stands until overcome by proof, Mr. Justice SWAYNE saying: "The case is a different one from what it would be if the mortgage stood alone, or the note was non-negotiable, or had been assigned after maturity. The question presented for our determination is whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative. The contract, as regards the note, was that the maker should pay it at maturity to any *bona fide* indorsee, without reference to any defenses to which it might have been liable in the hands of the payee. The mortgage was conditioned to secure the fulfillment of that contract. To let in such a defense against such a holder would be a clear departure from the agreement of the mortgagor and mortgagee, to which the assignee subsequently, in good faith, became a party. If the mortgagor desired to reserve such an advantage, he should have given a non-negotiable instrument. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who 'puts trust and confidence in the deceiver should be a loser rather than a stranger.'"

We must turn, then, to our registry laws and ascertain whether they impose any legal obligation upon the assignee of a note secured by a mortgage to take the assignment in the form of a conveyance, and have it recorded, as a means of affording notice to subsequent purchasers and encumbrancers, if he would avoid the postponement of his lien as to them. Section 3031, Hill's Code, provides that a mortgage may be discharged upon the record thereof "by the mortgagee or his personal representative or assignee" acknowledging satisfaction of the mortgage before the clerk, or executing a certificate to that effect with the formalities of a deed, and presenting the same to the clerk. This section recognizes the assignee as the proper party to discharge the record after the assignment of the note and mortgage. He is the *bona fide* owner and holder of the note and its security, which entitles him to discharge the mortgage. The mortgagee, after he has assigned his interest, has no power to extinguish the mortgage by acknowledgment of its satisfaction, release, or otherwise. Being without the power, his fraudulent acknowledgment of satisfaction cannot affect the rights of the assignee. As Mr. Justice DEADY said, "Such an acknowledgment is simply a fraud, and if any person must suffer by it, it ought to be the person who, by ignorance or carelessness, or otherwise, was deceived by it and acted upon it, but not the assignee who acquired the mortgage without fault and is a stranger to the fraudulent transaction. As well say that the purchaser in good faith from the grantee in a forged deed that has been admitted to record, is thereby protected at the expense of the true owner, who is without error or fault in the premises": *Oregon Trust Co.* v. *Shaw,* 5 Saw. 340.

In *Joerdon* v. *Schrimpf,* 77 Mo. 386, under a similar statute providing for the discharge of the record by the mortgagee and assignee, the court says: "The statute recognizes the assignee of the mortgage as the proper party to enter the satisfaction, and it has been held that

he is the proper party to make the entry." In that case one Ohlendorf was the payee of the note secured by the deed of trust, and the court said: "If the plaintiff purchased the note for value, before maturity, and before the entry of satisfaction, the payment to Ohlendorf and his entry of satisfaction of the record could not affect the security afforded by the deed of trust." * * * "Ohlendorf was not the *cestui que trust* when the entry was made, and was not the person authorized by the statute to make it, and it stands on the record a nullity."

In *Lee* v. *Clark*, 89 Mo. 556, it was held that the payee of a note secured by a deed of trust, after he had assigned the note, cannot discharge the property of the lien, as between a *bona fide* purchaser of the property and the assignee of the note, by entering satisfaction of the debt on the margin of the record, or otherwise. As notes secured by mortgage are transferable by the law merchant, and as, after such transfer, the mortgagee has no right or power to acknowledge satisfaction or to release the mortgage, it follows, as the cases indicate, that a person, desiring to purchase property, who finds on the record a mortgage which purports to be satisfied or released, must ascertain whether it was satisfied or released by the person authorized to discharge it. "Purchasers," says Mr. Jones, "are bound to know that if the mortgagee has endorsed the notes before maturity to a *bona fide* holder, the mortgagee has no longer authority to satisfy the mortgage; and therefore they are bound to ascertain whether the mortgagee still held the notes at the time he discharged the mortgage": 1 Jones, Mortgages, § 814. To the question, often reiterated, what shall a person desiring to purchase do under such circumstances as are disclosed by this record, we may quote the answer of HENRY, J., in *Lee* v. *Clark*, 89 Mo. 556, "Let it alone until he can ascertain who holds the note. He is under no obligation to buy, and prudence would dictate that he should not buy until satisfied that the owner of the

note had entered satisfaction of the debt." It may be true, as suggested by Mr. Justice Deady, that the statute (section 3031) is defective in not requiring the party making the acknowledgment or certificate to produce the evidence that he is at the time such mortgagee or assignee as to entitle him to discharge the record. But, however that may be, it is clear that a mortgagee cannot extinguish a mortgage which has passed from him by assignment; and, consequently, that a discharge of the record by the mortgagee, after its transfer, is a fraud upon the assignee, and his rights are unaffected thereby. Such being the case, unless the registry law makes it the duty of the assignee to take the assignment in the form of a conveyance and have it recorded, he is not bound to do so.

We are to inquire, then, whether there is any statute which imposes a legal obligation upon an assignee to record his assignment if he would protect himself against a subsequent purchaser or encumbrancer in good faith and for value? In many states provisions are made for recording the assignment of a mortgage, or, in default thereof, of postponing it to the conveyance of a subsequent purchaser or mortgagee. As the purpose of the registry laws is to protect subsequent purchasers against prior and unrecorded conveyances, the utility and convenience of extending such laws to the assignment of mortgages is conceded; but the registration of conveyances, or other instruments, is purely the creation of the statute, and unless it requires the assignee to record the assignment of the mortgage, he is not guilty of negligence in failing to do so. There is no specific direction in the statute upon the subject. The only mention of an assignment, as such, is found in section 3030, Hill's Code, which provides that "the recording of the assignment of a mortgage shall not in itself be notice to the mortgagor so as to invalidate a payment made by him to the mortagee." But this was only a declaration of the rule established by

the courts long before there was a statute authorizing assignments to be recorded. In *James* v. *Morey*, 2 Cow. 246, SAVAGE, C. J., said: "I know of no law requiring the assignment of a mortgage to be recorded. If notice of the assignment is not given to the mortgagor, he is protected in any payment he may make to the mortgagee. And this is the extent of the risk run by the assignee who neglects to give notice of the assignment." This provision then, as Mr. Justice DEADY said, was "merely the assertion of a rule that had long been established by the courts"; and, he added, "The most that can be said for this provision is that it impliedly authorizes an assignment to be recorded, or rather contemplates that it may be recorded by virtue of some other provision or statute. And yet by a still stronger implication arising out of sections 22 and 34 of said chapter, and the very nature of the case, it is provided that no instrument affecting the realty, which includes an assignment, shall be admitted to record, unless acknowledged and certified as a conveyance. An assignment of a mortgage may be made by an instrument in the form of a conveyance, and, in such case, may be admitted to record. But an assignment of a mortgage may be a mere writing under the hand of the assignor, declaring that he thereby assigns the mortgage to a person therein named. Such a writing is effectual to pass the lien of the mortgage, but it would not be entitled to record unless acknowledged and certified. But in the case of a mortgage given as security for a negotiable note, the debt being the principal and the security the incident, the same may be assigned by the simple indorsement or delivery of the note. In such case there is no assignment to record. In the absence, then, of any legislative direction to that effect, there does not seem to be any obligation resting upon an assignee to record his assignment to protect himself against any subsequent purchaser or mortgagee": *Oregon Trust Co.* v. *Shaw*, 5 Saw. 340.

This decision was approved by the writer in *Watson* v. *Dundee, Mtg. Co.* 12 Or. 481, ( 8 Pac. Rep. 548,) but, owing to the absence of one member of the court, and the dissent of the other, it failed to receive the approval of the court, so that *Watson* v. *Dundee* cannot be regarded as authority upon this subject. A more thorough consideration of the subject, rendered necessary by the facts in the case at bar, has satisfied us that the recording acts do not extend to the assignment of mortgages, and that the construction given to them in *Oregon Trust Co.* v. *Shaw* is correct. There is nothing in section 3030, *supra*, expressly or otherwise requiring an assignee to record his assignment. It nowhere imposes any duty upon him to have the assignment of the mortgage acknowledged and recorded to protect himself either against the fraud of his assignor, or the rights of subsequent purchasers or encumbrancers. The most that can be said for this section is that it contains an implication that when the instrument of assignment is in the form of a conveyance it may be admitted to record, but there is no language in it, or any other provision of the recording acts, which requires the assignee to record it in order to protect himself against the subsequently acquired rights of purchasers or encumbrancers in good faith or for value. Where there is no legal obligation resting upon the assignee to record the assignment to protect himself against subsequently acquired rights in the property, a mortgage may be assigned without any formal conveyance, as in the present case, by a simple indorsement on the note and delivery of the mortgage. The fact, therefore, that the assignee might take the assignment in the form of a conveyance and record it, cannot make his failure to do so negligence which operates to postpone his lien as against subsequent purchasers or mortgagees.

The question is not what the plaintiffs might have done to apprise the defendant grantees that they were encumbrancers, but what they were legally bound to do

in order to preserve the priority of their lien against the subsequently acquired rights of the defendants in the property. As the plaintiffs were not bound, under the recording acts, to register their assignment, they were under no legal obligation to take the assignment of the mortgage in the form of a conveyance, and record it, in order to prevent a fraudulent discharge of the record, or to protect subsequent grantees or mortgagees. They had the right to assume that the defendant grantees knew the law, and that they would exercise that degree of care and prudence which the law imposed upon them to avoid loss. When the defendants found that the mortgage was satisfied upon the record they were bound to ascertain whether it was done by one having authority, or take the consequences of their neglect. As ELLIOTT, C. J., said, "A second mortgagee who finds on record a mortgage receives notice of its existence, and he must ascertain whether the release was executed by one having authority, for he is bound to know, as matter of law, that notes secured by mortgage are transferable as articles of commerce, and that, after transfer, the mortgagee has no right to release the mortgage. He is bound, also, to know that he can obtain no notice from the record, because the law does not authorize the recording of assignments, and that he must, therefore, look elsewhere for information": *Reeves* v. *Hayes*, 95 Ind. 527. Section 7, 2 Rev. Stat. 1876, p. 335, of the Indiana statute, is identical with section 3030 of the Oregon statute, and although there are terms in the registry laws of that state much more comprehensive than our own, yet it was held in *Reeves* v. *Hayes* (1) that a mortgagee, after assigning the debts secured by a mortgage, has no power to enter satisfaction of a mortgage, and that such entry of satisfaction by him on the margin of the record will not give priority to a subsequent mortgagee in good faith without actual notice of the assignment of the debt; and (2) that there is no law authorizing the recording of an

assignment of a mortgage, and that such record, if made, would not have been notice to subsequent purchasers or mortgagees in good faith. In the absence, therefore, of any legislative direction requiring the assignment of mortgages to be recorded, there is no obligation resting upon an assignee to record an assignment to protect himself against any subsequent purchaser or mortgagee.

It results from these considerations that there was no error, and that the decree must be AFFIRMED.