[No. 5941-3-III. Division Three. February 28, 1985.]

GESA FEDERAL CREDIT UNION, *Appellant,* v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, *Respondent.*

*Wayne Gladstone* and *Gladstone & Swisher,* for appellant.

*H. H. Hayner* and *Minnick, Hayner & Zagelow,* for respondent.

HOPKINS, J.*—In December 1978 El Rancho Reata, Inc. (ERR), executed a note and mortgage on farmland located

---

*Judge Cameron K. Hopkins is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

in Benton County to Mutual Life Insurance Company of New York (MONY) to secure a $700,000 loan. At the time the mortgage was executed, irrigation equipment leased from Trans Union Leasing Corporation to Columbia Pacific Leasing, Inc., was located on the farmland. The equipment lease was for a term of 10 years, ending December 20, 1987. ERR also gave to MONY a security interest in the irrigation equipment cosigned by Columbia Pacific. The mortgage also provided that a Badger Mountain irrigation assessment was superior to MONY's interest. Also in December 1978, ERR executed a note and mortgage on the same property to GESA Federal Credit Union to secure a loan of $720,000 and a second note and mortgage, dated December 1979, for $892,694.28. There is no dispute that GESA's interest is secondary to MONY's.

When ERR defaulted on its obligation, MONY sued to accelerate and foreclose the mortgage and was granted a decree of foreclosure on January 15, 1981. The findings with the order of foreclosure provided for the following:

| | |
|---|---|
| Principal | $693,500.73 |
| Interest due as of 5/1/80 | 17,479.62 |
| Default interest at 12% from 5/1/80 to 1/15/81 | 61,380.41 |
| Badger Mtn. Irrigation Assessment | 219,414.65 |
| Interest on Irrigation Assessment from 6/25/80 to 1/15/81 | 14,920.56 |
| Court Proceedings Report | 78.75 |
| Sheriff's Fees | 52.50 |
| Auditor's Fees | 7.00 |
| Filing Fees (Superior & Bankruptcy) | 120.00 |
| Attorney Fees | 18,500.00 |
| Real estate taxes & interest | 2,453.82 |
| Total | $1,027,908.04 |

Judgment was awarded for $1,027,908.04 together with interest on $771,360.76 at 12 percent per annum and interest on $256,547.28 at the rate of 10 percent per annum from and after January 15, 1981. The sheriff sold the property on

February 27, 1981, to MONY, who bid $1,042,164.88.

After the foreclosure, MONY allowed the farming operations to continue pursuant to two leases. Under the terms of the leases, the landlord was responsible for the cost of irrigation equipment and water. On June 22, 1981, MONY paid $40,798.69, the balance due Trans Union Leasing for the annual rent on the irrigation equipment. Also during 1981, MONY paid two more irrigation assessments to the Badger Mountain Irrigation District; $117,852.82 in June and $116,815.50 in November. On February 19, 1982, GESA redeemed the property by paying the $1,677,339 MONY reported to the sheriff was required for redemption. GESA then filed a complaint against MONY for a redemption accounting pursuant to RCW 6.24.190. Both parties filed motions for summary judgment and MONY's motion was granted.

This appeal presents three basic issues: (1) What is the extent of the accounting accorded the redemptioner pursuant to RCW 6.24.190? (2) Was MONY obligated to comply with the filing requirements of RCW 6.24.150 in order to claim reimbursement for the Badger Mountain irrigation assessments? (3) Was the amount of interest the redemptioner was ordered to pay properly computed?

ISSUE ONE. Extent of accounting and review pursuant to RCW 6.24.190.

GESA contends all of the items that comprised the total which GESA had to pay to redeem are subject to review. Further, because MONY undertook an irrigated farming venture during the redemption period, the expenses for irrigation systems and water supply were part of the expenses that were to be offset by the profits and therefore MONY is not entitled to reimbursement in excess of the profits from the farming operation. Specifically, GESA objects to the following payments:

$244,424.96   Redemption payments made in January 1981, to Badger Mountain Irrigation District

$117,852.82   Due and paid to Badger Mountain Irrigation District June 30, 1981

$116,815.50   Due and paid to Badger Mountain Irrigation District November 30, 1981

$40,798.69   Annual rental fee for irrigation equipment paid to Trans Union Leasing on June 22, 1981

$1,050.00   Attorney fees and expenses deducted from rents and profits forwarded to GESA

RCW 6.24.190 was designed for commercial property where there are substantial rents and profits involved. The redemptioner may demand a written and verified statement of the profits and expenses and, if the statement is given, the redemptioner must redeem according to the amount specified. 2 Washington State Bar Ass'n, *Real Property Deskbook* § 41.78 (1981). Section 41.78 further provides:

> The reference to a "sworn statement" in RCW 6.24.190 refers only to a statement regarding the expenses incurred in operating the property, and the rents and profits received thereon. In determining the other amounts which a redemption[er] must pay in order to redeem, the parties look to RCW 6.24.140.

We agree. The statutory provisions are not mutually exclusive, but work in tandem. The right to redeem is a creature of statute, dependent entirely upon the statutory provisions. *Graves v. Elliott,* 69 Wn.2d 652, 657, 419 P.2d 1008 (1966); *Madison Properties, Inc. v. United States,* 375 F.2d 740 (9th Cir. 1967). Strict compliance with statutory provisions is necessary. *Kuper v. Stojack,* 57 Wn.2d 482, 483, 358 P.2d 132 (1960); *Prince v. Savage,* 29 Wn. App. 201, 203, 627 P.2d 996 (1981).

Section 41.78 of the *Real Property Deskbook* continues:

> The holder of a sheriff's certificate of purchase [*i.e.,* MONY] cannot require the redemptioner to pay the amount of expenses incurred in excess of rents and profits in order to redeem the property. *State ex rel. Bryant v. Starwich,* 131 Wash. 101, 229 P. 12 (1924). In *W. T. Watts, Inc. v. Sherrer,* 89 Wn.2d 245, 571 P.2d 203 (1977), the court held that the holder of a certificate of

purchase cannot subject the interest of the redemptioner to the liens of mechanics and materialmen without the redemptioner's consent or authorization.

There is some question in Washington whether a purchaser can recover payments made on an underlying lien during the redemption period. The King County Superior Court has held that payments made on an underlying lien constituted expenses in operating the property and permitted the holder of the certificate of purchase to recover payments made although there were no rents or profits. *Sternoff v. Waldt, et al.,* King County Cause No. 849885.

The holder of the certificate of purchase could recover payments made on the theory of equitable subrogation. *Jones v. Gore,* 141 Cal. App. 2d 667, 297 P.2d 474 (1956); *Spokane Sav. & Loan Soc. v. Park Vista Imp. Co.,* 160 Wash. 12, 294 P. 1028 (1930); *Goodrich v. Fahey,* 55 Wn.2d 692, 349 P.2d 729 (1960).

There is no question MONY had to make the first three contested payments for the assessments made by Badger Mountain Irrigation District. Those liens are superior to the interest of MONY and GESA and MONY was obligated to pay those liens in order to protect its security interest. Had MONY not made the payments, it would have lost its security interest and GESA would have had to make the same payments to protect its security interest. Thus, pursuant to RCW 6.24.140, MONY is entitled to reimbursement for the assessments paid to the irrigation district.

Rental expense on the irrigation equipment is more difficult to characterize. Is it a farming expense which should be offset against the profit or is it a lien against the property interest? The rental expense is not an improvement or renovation since the equipment was already on the property when MONY's and GESA's security interest came into being.

And if an accounting is requested by a redemptioner, the purchaser is allowed to offset the "expenses paid for operating, caring for, protecting and insuring the property," against the rents or profits received from such property. RCW 6.24.190. He is not, however, given the

right to an affirmative judgment for expenses incurred over and above the amount of the rents and profits, and under RCW 6.24.140, the redemptioner is not required to reimburse him for expenses incurred for repairs and maintenance.

This court so held in *State ex rel. Bryant v. Starwich,* 131 Wash. 101, 229 P. 12 (1924). Construing RCW 6.24-.190 (which was then Rem. Comp. Stat. § 600), we said that this section does not entitle the purchaser to receive from the redemptioner the amount of expenses in excess of rents and profits; and such section cannot be invoked by a purchaser whose expenses exceeded the rents and profits received. It was said that if the redemptioner were required to pay the purchaser for expenditures in excess of the income produced by the property, the purchaser could make the right to redeem so burdensome as to amount to a denial of the right. The redemptioner is required to pay only what the statute specifies, we said, and this does not include reimbursement for expenditures.

(Footnotes omitted.) *W.T. Watts, Inc. v. Sherrer,* 89 Wn.2d 245, 250–51, 571 P.2d 203 (1977).

The trial court ruled the irrigation equipment rental payment was a prior lien upon the property, allowing MONY reimbursement without offsetting rents and profits. However, the security interest extended only to the irrigation equipment and failure of MONY to make the rental payment would not have jeopardized either MONY's or GESA's security interest in the real property but only MONY's security interest pursuant to the financing statement. GESA had no interest in the irrigation equipment and claimed none.

Since the irrigation equipment rental payment is not an assessment and is not a payment made to protect the interest of either mortgagee in the real property, we conclude the payment to be a "farming expense" properly offset against the rents and profits from the farming venture.

The last amount in controversy is the $1,050 attorney fees incurred by MONY during the year of redemption. It is unclear from the record whether these fees were incurred

as a result of the farming operation and thus an offset against the farming operation's profits pursuant to RCW 6.24.190, or were incurred for some other reason. Because the record is incomplete, the issue must be remanded for further evidence on the subject.

ISSUE Two. Compliance with RCW 6.24.150.

RCW 6.24.150 provides in part:

> Successive redemptions. . . . If the purchaser or redemptioner shall pay any taxes or assessments, or have or acquire any such lien as herein mentioned, he must file a statement thereof with the auditor of the county where said property is situate before the property shall have been redeemed from him, otherwise the property may be redeemed without paying such tax, assessment or lien. Such statement shall be recorded by such auditor.

The right to redeem property is not an equitable right but rather is a creature of statute and depends entirely upon the provisions of the statute creating the right. *Kuper v. Stojack, supra; Prince v. Savage, supra.*

■ RCW 6.24.140 does not require filing with the auditor. This fact, coupled with the permissive language used in RCW 6.24.150, "the property *may be* redeemed without paying such tax, assessment or lien" (italics ours), and the admission by GESA it received notice of the amounts necessary to be paid to redeem the property, would support the trial court's conclusion that failure to file was not fatal to reimbursement. Finally, had MONY not paid the irrigation expenses, GESA would have had to make those payments in order to redeem the property because they were a lien against GESA's own security interest.

There was no error in failing to file a statement pursuant to RCW 6.24.150.

ISSUE THREE. Computation of interest.

GESA contends interest should have been based on a 365–day year instead of standard banking and financial tables which calculate interest on a 360–day year (each month is considered to be 30 days long). The result is a $1,154.88 difference in favor of MONY. MONY responds

that the interest was computed pursuant to accepted banking practices and was properly allowed under RCW 6.24-.140, but in any event the issue should have been raised when judgment was entered in the original foreclosure action, as GESA was a party to that action. We agree.

In summary, we affirm the trial court's ruling that MONY should be reimbursed for irrigation assessments paid pursuant to RCW 6.24.140. We reverse the trial court's conclusion that MONY is entitled to the irrigation rental payment as a prior lien and hold that it is a farming expense to be allowed only to the extent of the profits. MONY properly complied with the statutory scheme and did not waive reimbursement for assessments by failure to file pursuant to RCW 6.24.150 and interest on the judgment was properly computed pursuant to accepted financial practices.

Two factual issues cannot be resolved on the record before this court: the purpose for which $1,050 attorney fees were incurred and whether GESA received a profit of $30,016.54 or $50,870.12 as claimed by MONY. The case is remanded for resolution of these two issues.

MUNSON and THOMPSON, JJ., concur.

Review granted by Supreme Court May 10, 1985.